Todd M. Friedman (216752)
Meghan E. George (274525)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard Street, Suite 780
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.co
mgeorge@toddflaw.com
Attorneys for Plaintiff

*Attorneys for Plaintiff, Alexandra Reid, and all others similarly situated*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDRA REID, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CARMAX AUTO SUPERSTORES, INC.;<br>CARMAX AUTO SUPERSTORES WEST COAST, INC.;<br>DOES 1-100, INCLUSIVE.<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>(1)  Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq*.)<br>(2)  Common Law Fraud<br>(3)  Unjust Enrichment<br><br>**Jury Trial Demanded** |

Plaintiff ALEXANDRA REID ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, allege as follows:

## PRELIMINARY STATEMENTS

1.     This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations Unfair Competition Law (Cal. Business & Professions Code  §§ 17200 *et seq.*, common law fraud, and unjust enrichment, resulting from the illegal actions of Carmax, in fraudulently and unlawfully selling vehicles that do not meet California Emissions standards, including fraudulently completing the title certificate, to unlicensed dealers for retail sale, in violation of several California laws. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction pursuant to 28 U.S.C. §1332(d), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest or costs and is a class action in which the members of the class are citizens of a State different from the Defendant.

3.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this District, and Carmax does business, <u>inter alia</u>, in the Central District of California.

**PARTIES**

4.     Plaintiff ALEXANDRA REID ("Plaintiff") is an individual who purchased a Class Vehicle from an unlicensed dealer to whom Defendants unlawfully sold the vehicle for retail sale.

5.     On information and belief, Defendant CARMAX AUTO SUPERSTORES, INC. and Defendant CARMAX AUTO SUPERSTORES WEST COAST, INC (referred to in the collective as "Defendants" or "Carmax") are Virginia corporations whose principal places of business are located in Richmond, Virginia.

6.     At all times relevant hereto, Defendants were engaged in the marketing, and sale of vehicles throughout the United States.

**FACTS COMMON TO ALL COUNTS**

7.     Defendants are one of the largest retail sellers of vehicles in the United States. Defendants advertises, markets, sells, and distributes vehicles throughout California and the United States.

8.     During the Class Period the Defendants engaged in fraudulent conduct to sell cars as retail to unlicensed dealers under the guise of a wholesale dealer to dealer transactions, when California's Vehicle Code prohibited such sales.

9.     On May 30, 2020, Plaintiff became a victim of Defendants' fraudulent scam when she purchased a vehicle from private seller, Isaac Lee ("The Car"), the

partner to unlicensed dealer Sandra Wellington, to whom Carmax unlawfully sold the vehicle to.

10.     The Car was mechanically unable to pass the California mandated smog test when acquired by CarMax. Therefore, per California Veh. Code § 24007 it could not be sold as retail, and only sold as wholesale to a licensed dealer. CarMax transferred the car to its dealer-only auction in Murrieta, California.

11.     Instead of auctioning the Car to a licensed dealer, CarMax unlawfully transferred the Car to Sandra Wellington of "Genuine Automotive Enterprises" who did not possess nor produce a valid dealer license on April 8, 2019.

12.     CarMax fraudulently filled out the dealer-only section on the back of the certificate of title to fraudulently complete the transaction as if it were wholesale. CarMax neglected to record a dealer license number for the buyer as legally required or record "Sold by" with the name and date of the auction as legally required (California Veh. Code § 6100). Although Sandra is listed as the purchaser, the signature on the back of the title is "RW", which reflects the initials of Sandra's husband and partner in the scam, Rod Wellington.

13.     CarMax then failed to file the required paperwork for the wholesale transaction (California Reg. § 398) with the DMV. CarMax filed a release of liability instead which does not apply to this type of transaction, but a retail one, and listed the fraudulent dealership as the buyer. This muddled the facts of the transaction,

making it appear as retail, and therefore disguising its illegal nature. This kept the unlicensed dealers off of the DMV's radar and able to successfully victimize Plaintiff. Additionally, failing to report to the DMV painted an untrue history of the Car which Plaintiff relied upon in her decision to purchase it. Indeed, Plaintiff never would have bought the Car had she known it was sold at auction less than two months prior.

14.    It should be noted that multiple atypical business practices had to occur for CarMax to deal a wholesale car to an unlicensed dealer at a dealer-only auction. CarMax's own protocol requires dealers to register in its online system in order to participate in dealer-only auctions. The registration process requires dealers to upload documents proving their credentials. By this protocol, it's physically impossible for CarMax to auction a wholesale Car to an unlicensed dealer unknowingly. CarMax's own internal bill of sale lists Sandra Wellington as the purchaser with an invalid dealer license number and a business address belonging to a mailbox in an empty field in Missouri. Indeed, Plaintiff was personally able to verify the dealer's non-existence by a simple google search and confirm unequivocally by emailing the Missouri DMV. CarMax has far more resources at its disposal and bears the burden of dealing its cars lawfully which means verifying that a dealer is in fact licensed before selling them a wholesale car.

15.     On May 30, 2020, Plaintiff purchased the Car from a private seller named Issac Lee after seeing the ad on the Nextdoor app. Plaintiff was presented with a fraudulent smog certificate dated May 23rd, 2020 as part of the sale. Within 20 miles of the purchase the check engine light came on prompting Plaintiff to take it to WI Simonson Mercedes Benz.

16.     There, Plaintiff was shown diagnostics that the Car had been unable to pass a smog inspection  for several years. Realizing that she was the victim of fraud, Plaintiff immediately filed a claim with the California Bureau of Automotive repair who found an illegal smog check had been obtained and cited the responsible mechanic. Plaintiff also discovered publicly available Facebook posts establishing Issac Lee's relationship to Sandra and Rod Wellington, photos of all the cars they sold on Facebook Marketplace, and Issac's bio defining his career as "flipping luxury whips".

17.     Plaintiff promptly alerted CarMax that they had illegally dealt the Car and what situation they put Plaintiff in by doing so. Plaintiff provided Defendant Carmax with all necessary documents.

18.     Plaintiff also alerted Carmax that this had happened with multiple vehicles (the "Class Vehicles"), which had also been sold by fraudulent means to unlicensed dealers,  and not just the Car Plaintiff had purchased. Carmax ignored Plaintiff's complaints and simply told her that they dealt with the matter "internally."

19.     CarMax failed to uphold its legal obligation to report any suspected unlicensed dealing even after Plaintiff gave them proof they had intentionally aided unlicensed dealers, and conducted a fraudulent smog check. This does not make CarMax appear any more innocent and shows a total disregard for the potential victims they have affected.

20.     Indeed, many of the laws CarMax violated were designed to protect consumers and undermined that protection once again. As the largest dealer of used cars in the U.S, CarMax breached its duty to the public repeatedly by putting cars that are not fit to drive onto the streets, and worse into the hands of unlicensed dealers.

21.     CarMax owned the Car and filed a release of interest, and as such, CarMax was aware they sold the Car and who they sold it to. CarMax was legally responsible for any repairs required to make the Car pass a smog test before selling it as retail. When CarMax illegally sold it as retail without a valid smog check, CarMax unfairly shifted the burden of those repairs onto every subsequent party finally landing on Plaintiff and all similarly situated consumers in the stream of commerce. CarMax acted atypically, unlawfully, and often fraudulently at every juncture pertaining to the sale of the Car. CarMax at the very least is not providing adequate oversight of its employees if none of the many discrepancies in this transaction raised a single red flag that it was unlawful in nature.

22.     Carmax, and not Plaintiff, the Class, or Sub-Class, knew or should have known that by unlawfully putting vehicles that could not pass a smog check into the stream of commerce to unlicensed dealers, that consumers, like Plaintiff, would be negatively affected by the results of this fraud.

23.     As a result of Carmaxs' acts and omissions outlined above, Plaintiff has suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

a.      Lost money;

b.      Wasting Plaintiff's time; and

c.      Stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling.

## CLASS ALLEGATIONS

24.     Plaintiff brings this action on behalf of herself and all others similarly situated, as a member of the proposed class (the "Class"), defined as follows:

> All persons within the United States who purchased the Class Vehicles within four years prior to the filing of this Complaint.

25.     Plaintiff also brings this action on behalf of herself and all others similarly situated, as a member of the proposed sub-class (the "Sub-Class"), defined as follows:

> All persons within California who purchased the Class Vehicles within four years prior to the filing of this Complaint.

26.     Defendants, their employees and agents are excluded from the Class and Sub-Class. Plaintiff does not know the number of members in the Class and Sub-Class, but reasonably believes the members number in the hundreds, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

27.     The Class and Sub-Class are so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of their members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Class and Sub-Class include thousands, if not millions of members. Plaintiff alleges that the class members may be ascertained by the records maintained by Carmax.

28.     This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Class and Sub-Class are so numerous that joinder of their members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

29.     There are questions of law and fact common to the Class affecting the parties to be represented. The questions of law and fact common to the Class

predominate over questions which may affect individual class members and include, but are not necessarily limited to, the following:

a. Whether the Carmax intentionally, negligently, or recklessly engaged in fraudulent conduct by transferring vehicles to unlicensed dealers and misrepresenting the terms of the sale on the certificate of title;

b. Whether the Carmax's conduct was knowing and intentional;

c. Whether Carmax's conduct was unfair and deceptive;

d. Whether Carmax unjustly enriched itself as a result of the unlawful conduct alleged above;

e. Whether the Class and Sub-Class are entitled to restitution, actual damages, punitive damages, and attorney fees and costs.

30. As a resident of the United States and a purchaser of the Class Vehicle in the State of California, Plaintiff is asserting claims that are typical of the Class and Sub-Class.

31. Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Class and Sub-Class.

32. Plaintiff will fairly and adequately protect the interests of the members of the Class and Sub-Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

33.     A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class and Sub-Class members is impracticable. Even if every Class and Sub-Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each class member. Class treatment will also permit the adjudication of relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

34.     The prosecution of separate actions by individual members of the Class and Sub-Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests.

35.     Plaintiff's claims and injuries are identical to the claims and injuries of all class and sub-class members, because all claims and injuries of all class and sub-class members are based on the same legal theory. All allegations arise from the identical, fraudulent conduct engaged in by Carmax when they transferred vehicles to unlicensed dealers.

36.     Defendants have acted or refused to act in respect generally applicable to the Class and Sub-Class thereby making appropriate final and injunctive relief with regard to the members of the Class and Sub-Class as a whole.

37.     The size and definition of the Class and Sub-Class can be identified through records held by retailers carrying and reselling the Class Vehicles, and by Carmax's own records indicating history of fraudulent sales to unlicensed dealers.

## FIRST CAUSE OF ACTION
### Violation of Unfair Business Practices Act
### (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

52.     Plaintiff incorporates by reference each allegation set forth above.

53.     Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL.  Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices.   A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm--that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm.  Furthermore, the "act or practice" aspect of the statutory

definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

## UNFAIR

54.    California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice."  Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.  Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date.

55.    In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

56.    Here, Carmax's conduct has caused and continues to cause substantial injury to Plaintiff and members of the Class.  Plaintiff and members of the Class have suffered injury in fact due to Carmax's decision to sell unlawfully vehicles that could not pass lawful emissions testing to unlicensed dealers, in violation of a number of California laws and regulations. Thus, Carmax's conduct has caused substantial injury to Plaintiff and the members of the Sub-Class.

57.    Moreover, Carmax's conduct as alleged herein solely benefits Carmax while providing no benefit of any kind to any consumer.  Such deception utilized

by Carmax convinced Plaintiff and members of the Class that the Vehicles they subsequently purchased were lawfully able to be sold, and driven on the roads. In fact, knowing that Class Products, by their objective terms were unable to pass standard emissions testing, and could not at the time of sale from CarMax to unlicensed dealers knowingly and intentionally. Carmax unfairly profited from their sale, in that Carmax received payment for vehicles that it could not otherwise have sold, and knew that the expected benefit that Plaintiff, and other consumers, would receive from these Vehicles were nonexistent. Thus, the injury suffered by Plaintiff and the members of the Sub-Class is not outweighed by any countervailing benefits to consumers.

58.   Finally, the injury suffered by Plaintiff and members of the Class and Sub-Class is not an injury that these consumers could reasonably have avoided. After Carmax, fraudulently and against many California laws, transferred the vehicles to unlicensed dealers, they acted in such a way that concealed the fraud and the true nature of the sale. Accordingly, Plaintiff, Class members, and Sub-Class Members suffered injury in fact due to Carmax's unlawful sale of the Class Vehicles to unlicensed dealers. Carmax failed to take reasonable steps to inform Plaintiff and class members that the Class Vehicles could not pass emissions testing, including intentionally concealing the true nature of the sale, as set forth herein.

59.   As such, Carmax took advantage of Carmax's position of perceived power in order to deceive Plaintiff and the Class members to purchasing these vehicles down the line, in order to make money off of a sale of a vehicle that could not otherwise be sold. Therefore, the injury suffered by Plaintiff and members of the Class is not an injury which these consumers could reasonably have avoided.

60.   Thus, Carmax's conduct has violated the "unfair" prong of California

Business & Professions Code § 17200.

**FRAUDULENT**

61.     California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice."  In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

62.     The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived.  Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

63.     Here, not only were Plaintiff and the Class members likely to be deceived, but these consumers were actually deceived by Carmax.  Such deception is evidenced by the fact that Plaintiff agreed to purchase Class Vehicles under the basic assumption that they were traceable in the stream of commerce, as required by the California Vehicle Code and Regulations.  Plaintiff's reliance upon Carmax's deceptive writings and transfer is reasonable due to the unequal bargaining powers of Carmax and Plaintiff. For the same reason, it is likely that Carmax's fraudulent business practice would deceive other members of the public.

64.     As explained above, Carmax deceived Plaintiff and other Class Members by falsely concealing the true nature of the vehicles and the true nature of the sale of those Class Vehicles to unlicensed dealers.

65.     Thus, Carmax's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

**UNLAWFUL**

66.     California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

67.     As explained above, Carmax deceived Plaintiff and other Class Members unlawfully and fraudulently selling the Class Vehicles to unlicensed dealers when they were not fit for retail sale.

68.     Carmax used fraudulent paperwork, and misrepresentations during the unlawful sale of the Class Vehicles to unlicensed dealers, to induce Plaintiff and Class Members to purchase the Class Vehicles down the line, in violation of California Business and Professions Code Section 17500, et seq.  Had Carmax not fraudulently sold the Class Vehicles, Plaintiff and Class Members would not have purchased the Class Vehicles. Indeed, Carmax intentionally concealed the illegal nature of the sales, and in doing so aided unlicensed dealers by providing the primary mechanism on which their fraud relied, the Cars. Carmax's conduct therefore caused and continues to cause economic harm to Plaintiff and Class Members.

69.     These representations by Carmax are therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 *et seq*.

70.     Carmax has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class Members to judgment and equitable relief against Carmax, as set forth in the Prayer for Relief.  Additionally, pursuant to Business and Professions Code section 17203, Plaintiff and Class Members seek an order requiring Carmax to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Carmax to correct its actions.

## SECOND CAUSE OF ACTION
## COMMON LAW FRAUD

71.     Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 81 above as if fully reiterated herein.

72.     Through it's intentional violation of a number of laws put in place to prevent transfer of vehicles not fit for retail sale to unlicensed dealers, as well as

it's false statements on the transfer paperwork itself as set forth herein, Carmax made false statements of material fact.

73.     At the time Carmax fraudulently indicated that it had sold the vehicles to a licensed dealer on the transfer paperwork, it knew, or reasonably should have known, that the statements described above were false.

74.     At the time Carmax made the false statement that it was transferring the vehicle to a licensed dealer, as it did on the certificate of title, it intended to deceive all future potential purchasers of the vehicle, including Plaintiff, and the DMV.

75.     Plaintiff relied upon the truth of the statements described above, and the truth of the representations on the certificate of title, and purchased the Class Vehicle, only to find that the Car was fraudulently sold, and failed to conform to California Emissions standards at the time that it was sold by CarMax.

76.     As a result of their reasonable reliance upon Carmax's false statements of material fact as set forth above, Plaintiff and other members of the Class and Sub-Class have suffered concrete and particularized injuries, harm and damages which include, but are not limited to, the loss of money spent on vehicles they did not want to buy, extensive repairs required to make these unfit vehicles pass a smog test, and stress, aggravation, frustration, inconvenience, emotional distress, mental anguish, and similar categories of damages.

## THIRD CAUSE OF ACTION
## UNJUST ENRICHMENT

77.      Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 76 above as if fully reiterated herein.

78.     Carmax incurred monetary benefit from falsifying the documentation and unlawfully selling the Class Vehicles to unlicensed dealers.

79.     Carmax has been unjustly enriched by retaining the revenues derived

from the unlicensed dealers purchase of the Class Vehicles, based on the false and unlawful statements that are reflected on the Certificate of Title.

80.     Carmax's retention of the revenue it received from the fraudulent and unlawful sale of it's vehicles to unlicensed dealers, and subsequently the Plaintiff, the Class, and the Sub-Class is unjust and inequitable because Carmax's false statements caused injuries to Plaintiff, the Class, and the Sub-Class, because they would not have purchased the Class Vehicles if they knew that the Class Vehicles were unfit under California law for driving.

81.     Carmax's unjust retention of the benefits conferred on it by Plaintiff, the Class, and the Sub-Class entitles the Plaintiff, the Class, and the Sub-Class to restitution of the money they paid for the Class Vehicles as a result of Carmax's fraudulent misrepresentations.

## MISCELLANEOUS

82.     Plaintiff and Class Members allege that they have fully complied with all contractual and other legal obligations and fully complied with all conditions precedent to bringing this action or all such obligations or conditions are excused.

## REQUEST FOR JURY TRIAL

83.     Plaintiff requests a trial by jury as to all claims so triable.

## PRAYER FOR RELIEF

84.     Plaintiff, on behalf of herself and the Class, requests the following relief:

(a)     An order certifying the Class and appointing Plaintiff as Representative of the Class;

(a)     An order certifying the undersigned counsel as Class Counsel;

(b)     An order requiring Carmax, at its own cost, to notify all Class Members of the unlawful and deceptive conduct herein;

| | (c) | Actual damages suffered by Plaintiff and Class Members as applicable or full restitution of all funds acquired from Plaintiff and Class Members from the sale of fraudulently sold Class Vehicles during the relevant class period; |
| | (d) | Punitive damages, as allowable, in an amount determined by the Court or jury; |
| | (e) | Any and all statutory enhanced damages; |
| | (f) | All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power; |
| | (g) | Pre- and post-judgment interest; and |
| | (h) | All other relief, general or special, legal and equitable, to which Plaintiff and Class Members may be justly entitled as deemed by the Court. |

Dated:  June 11, 2021                    Respectfully submitted,

LAW OFFICES OF TODD M. FRIEDMAN , PC


By: /s Todd. M. Friedman
TODD M. FRIEDMAN, ESQ.
Attorney for Plaintiff Alexandra Reid